SUMMONS ISSUED FILED CLERK

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK 12 JUN 11 PM 4:04

U.S. DISTRICT COURT
EASTERN DISTRICT
OF NEW YORK

---

THE SWATCH GROUP (U.S.) INC.

Plaintiff,

v.

STÜRHLING ORIGINAL LLC and
VALUEVISION MEDIA, INC.,

Defendants.

Civil Action No.:

CV 12- 2927

IRIZARRY, J.

MANN. M.J.

---

## COMPLAINT

Plaintiff, The Swatch Group (U.S.) Inc. ("Plaintiff" or "SGUS") brings this action for past and ongoing loss and damage sustained as a result of the acts of the Defendants, as set forth below. As and for its Complaint against the Defendants, Plaintiff hereby states and alleges the following:

## PARTIES

1.      Plaintiff, The Swatch Group (U.S.) Inc. ("SGUS") is a corporation duly organized and existing by virtue of the laws of Delaware with its principal place of business at 1200 Harbor Boulevard, 7th Floor, Weehawken, New Jersey.

2.      On information and belief, Defendant Stührling Original LLC ("Stührling") is a domestic limited liability company doing business in the state of New York with its principal place of business at 449 20th Street, Brooklyn, New York.

3.      On information and belief, Defendant ValueVision Media Inc. ("ValueVision") is a Minnesota corporation with its principal place of business at 6740 Shady Oak Road, Eden

Prairie, Minnesota and operates the ShopNBC television network and website available at www.shopnbc.com.

## JURISDICTION AND VENUE

4.      On information and belief, Defendants have committed and are committing acts of Trademark Infringement, Unfair Competition and False Advertising under common law and the Lanham Act, as hereinafter alleged, in this District, through displaying, selling, advertising, and offering for sale goods that infringe on Plaintiff's trade dress.

5.      This action is for Trademark Infringement, Unfair Competition and False Advertising arising under the Lanham Act §43(a), 15 U.S.C. §1125, and Trademark Infringement, unfair competition and false designation of origin and false advertising arising under common law and the laws of the State of New York.

6.      This Court has original jurisdiction pursuant to 28 U.S.C. §§1331 and 1338 as it involves claims presenting federal questions under 15 U.S.C. §1121(a) (actions arising under the Lanham Act have original jurisdiction in federal courts). This Court also has supplemental jurisdiction over the asserted claims of common law trademark infringement and unfair competition pursuant to 28 U.S.C. §1367(a), because such claims are so related to those claims under which the Court has original jurisdiction that it forms part of the same case and controversy under Article III of the United States Constitution.

7.      Venue is proper in this District pursuant to 28 U.S.C. §1391 (b) and (c) because a substantial part of the events or acts giving rise to the claim occurred in this District, a substantial part of the property that is the subject of the action is situated in this District, and upon

2

information and belief, Defendants and/or its principals reside and/or conduct business in this District. The acts complained of also have been and continue to be committed in this District.

## FACTS

8.     SGUS owns the entire right, title, and interest in the federally protected trade dress of HAMILTON watches, including the distinct and well-known HAMILTON VENTURA watch.

9.     HAMILTON was founded as an American watch brand, dating back to 1892, in Lancaster, Pennsylvania.

10.     During the second decade of the 20th century the HAMILTON brand gained the prestigious rank of supplier to the United States Armed Forces. During World War II, HAMILTON stopped production of watches for consumers to concentrate on the huge task of providing American armed forces with a total of one million timepieces.

11.     The HAMILTON brand is widely known among U.S. consumers as the source of exclusive, fashionable, high quality precision watches.

12.     HAMILTON introduced the HAMILTON VENTURA watch in 1957 as the world's first electric, battery-powered watch.

3

13.     In addition to being the world's first electric, battery-powered watch, the HAMILTON VENTURA's distinctive shape and design elements, as depicted below set it apart from traditional watches.



14.     Designed by Richard Arbib to embody the rapid technological breakthroughs that the world had seen after World War II, the HAMILTON VENTURA trade dress incorporates a shield-shaped case and bezel, with points at 1 o'clock, 5 o'clock and 9 o'clock, scalloping along two of the edges of the shield-shaped case, and a crown protruding at the 3 o'clock position (hereinafter the "Ventura Trade Dress"). The Ventura Trade Dress is unique, inherently distinctive, and non-functional.

15.     Since its introduction in 1957, various models and reissues have been offered for sale and sold, all characterized by the Ventura Trade Dress including the following:

4

16.    Upon its introduction in 1957, the HAMILTON VENTURA was worn by a variety of celebrities. Rod Serling, writer of The Twilight Zone television show, introduced some episodes of the series while wearing his HAMILTON VENTURA watch.

17.    Most notably, Elvis Presley wore a HAMILTON VENTURA in the 1961 movie "Blue Hawaii."



http://1957timecapsule.wordpress.com/tag/elvis-presley/

18.    The HAMILTON VENTURA was worn by Kevin Bacon in the 2005 movie "Where the Truth Lies."

19.    In addition, the original HAMILTON VENTURA was featured in a 2010 episode of the critically acclaimed and award winning television show "Mad Men," entitled "The Fog" (Season 3 Episode 5). Character Ken Cosgrove states, "it says HAMILTON electric," when showing his watch with the Ventura Trade Dress.

20.    Famously, the HAMILTON VENTURA reissue was worn by actor Will Smith in 1997's blockbuster film "Men in Black," and again in 2002's sequel "Men in Black II" and has

been prominently featured most recently in 2012's "Men in Black III," a movie which broke box office records.

21.    Plaintiff has invested millions of dollars in advertising and promoting the HAMILTON VENTURA watch with its unique design in the United States and internationally, including in printed publications, such as newspapers and upscale periodicals.

22.    HAMILTON VENTURA watches are sold worldwide on three different continents in over 40 countries, including in the United States.

23.    HAMILTON VENTURA watches have been referenced in 286 press clippings in 19 different countries since 2010.

24.    As a result of its long-standing popularity, unique design, and Plaintiff's advertising and promotion efforts, the HAMILTON VENTURA's distinctive trade dress is recognized by consumers and has acquired a secondary meaning, designating to consumers that Hamilton is the source of watches bearing this trade dress.

25.    Over the years, the HAMILTON VENTURA watch has been reissued, but has always maintained its original core design features, including but not limited to, a shield-shaped case and bezel, with points at 1 o'clock, 5 o'clock and 9 o'clock, scalloping along two of the edges of the shield shaped case, and a crown protruding at the 3 o'clock position.

26.    Currently, the HAMILTON VENTURA watch is available in a variety of different models, colors, finishes, and alloys. Each of these models retain the famous original design features of the Ventura Trade Dress.

27.     The Ventura Trade Dress has acquired distinctiveness and secondary meaning. The public and trade have come to rely on Plaintiff's trade dress to distinguish its products and services from those of others.

28.     Pursuant to 15 U.S.C. § 1125, the Ventura Trade Dress is a protected trade dress under the Lanham Act.

29.     HAMILTON watches have a strong association with Hollywood, with HAMILTON watches appearing in more than 400 films.

30.     This matter is arising coinciding with the recent release of the film "Men in Black III." The HAMILTON Ventura watches worn once again of a prominent "character" in the film and related to a significant product placement in the motion picture. Since its release on May 25, 2012, "Men in Black III" has been one of the highest grossing movies from Hollywood, with box office grosses sales exceeding $ 135 million in the U.S.

31.     Without permission or authorization of Plaintiff, Defendant Stührling appropriated the Ventura Trade Dress and applied it to its Stührling Ricochet watches (hereinafter, the "Infringing Watches").

7

32. Defendant's Infringing Watches based upon SGUS's Ventura Trade Dress are comprised of the following features: a shield-shaped case and bezel, with points at 1 o'clock, 5 o'clock and 9 o'clock, scalloping along two of the edges of the shield-shaped case, and a crown protruding at the 3 o'clock position.



http://www.amazon.com/Stuhrling-Original-318-33551-Ricochet-Automatic/dp/B007ZQE1DY

33. Upon information and belief, Defendant Stührling had access to Plaintiff's Ventura Trade Dress and intentionally copied or caused to be copied the designs of Plaintiff's Ventura Trade Dress for the specific purpose of infringing on Plaintiff's trade dress in HAMILTON VENTURA.

34. Defendant Stührling has marketed, promoted, advertised, and sold these unlawful and unauthorized reproductions through online retailers such as Amazon.com (http://www.amazon.com/Stuhrling-Original-318-33551-Ricochet-Automatic/dp/B007ZQE1DY)

8

and ShopNBC.com

(http://www.shopnbc.com/St_uuml_hrling_Original_Men_s_Ricochet_Automatic_Stainless_Steel_Leather_Strap_Watch/616-730.aspx?storeid=1&track=-20101&cm_re=SearchList-_-N-_-N&page=LIST&free_text=ricochet) and on the ShopNBC television network.

35.     ShopNBC is a unit of Defendant ValueVision. www.ShopNBC.com is the internet retail arm of ValueVision's ShopNBC unit.

36.     Defendant ValueVision has marketed, promoted, advertised, and sold Defendant Stührling's Infringing Watches through its www.ShopNBC.com website.

37.     Defendant ValueVision has marketed, promoted, advertised and sold Defendant Stührling's Infringing Watches through its ShopNBC home shopping television channel.

38.     Defendant Stührling's Infringing Watches incorporate design elements that are identical or virtually identical to the designs featured in SGUS's Ventura Trade Dress.

39.     Defendants have advertised, promoted, and offered for sale, and continue to advertise, promote and offer the Infringing Watches for sale through the same channels of trade as Plaintiff SGUS.

40.     Upon information and belief, Defendants are attempting to pass the Infringing Watches off as Plaintiff's product in a manner calculated to deceive Plaintiff's customers and members of the general public in that Defendant Stührling has copied or caused to be copied SGUS's HAMILTON VENTURA watches in an effort to make Defendant Stührling's Infringing Watches confusingly similar to Plaintiff's HAMILTON VENTURA watches and/or pass off Defendant Stührling's Infringing Watches as Plaintiff's own HAMILTON VENTURA watches.

41.     Defendants have engaged in a pattern of deliberate and willful infringement designed to confuse and deceive consumers as to the source and origin of the Infringing Watches and trade upon SGUS's valuable intellectual property, goodwill, and reputation.

42.     Upon information and belief, on or about May 28, 2012, Lawrence Magen, President of North American Operations for Defendant Stuhrling, appeared on Defendant ValueVision Media's ShopNBC television network to sell the Infringing Watches where the host of the show noted, "if memory serves there is another motion picture release now where this is once again being touted."

43.     Defendants have engaged in a pattern of deliberate and willful infringement designed to misappropriate Plaintiff's trade dress, confuse consumers as to the source of the Infringing Watches, and trade upon the valuable goodwill and reputation of SGUS's intellectual property.

44.     Upon information and belief, Plaintiff SGUS has lost substantial revenue and incurred damage as a result of Defendants' wrongful and infringing conduct.

45.     Defendants' wrongful conduct has deprived SGUS of opportunities for expanding goodwill.

46.     As a direct and proximate result of the acts of the Defendants alleged above, Plaintiff has already suffered irreparable damages and lost revenues.

10

**COUNT I**

**TRADEMARK INFRINGEMENT OF THE
VENTURA TRADE DRESS UNDER THE LANHAM ACT**

47.     Plaintiff SGUS repeats and reavers each and every allegation contained in paragraphs 1-46 inclusive, as if fully recited herein.

48.     This claim is for infringement of SGUS's famous and well-known Ventura Trade Dress. This claim arises under Section 34 of the Trademark Act of 1946, as amended. 15 U.S.C. § 1114.

49.     Without the consent or authorization of SGUS, Defendants openly advertise and sell watches copying, in minute detail, the Ventura Trade Dress.

50.     Defendants are not authorized by SGUS to sell any watches bearing the Ventura Trade Dress in the United States.

51.     The unauthorized appropriation and use of the Ventura Trade Dress by Defendant Stührling for its Infringing Watches is likely to cause confusion, mistake, or deception among customers and the public as to the source or origin of Defendant Stührling's Infringing Watches, in that consumers are likely to believe that Defendant Stührling or their Infringing Watches are legitimately connected with SGUS.

52.     Defendant's unauthorized sale of products incorporating the Ventura Trade Dress confuses consumers as to the source, nature, or approval for sale of Defendant Stührling's products, and misleads consumers into believing that SGUS had authorized the sale of the Infringing Watches by Defendants Stührling and ValueVision.

11

53.    Defendants' advertising, promotion, sale, and distribution of the Infringing Watches causes harm to SGUS and its goodwill and reputation built in the Ventura Trade Dress.

54.    Defendants infringes upon Plaintiff's rights in its Ventura Trade Dress in violation of the Lanham Act, 15 U.S.C. § 1114.

55.    Upon information and belief, Defendants' conduct was and is willful and intentional.

56.    All of Defendants' acts were performed without the consent, permission, license, or authorization of SGUS. The acts alleged against Defendants herein constitute trademark infringement.

57.    Defendants' acts of trademark infringement, as alleged above, have caused SGUS to suffer damages and SGUS will continue to suffer substantial damages as a result.

58.    Defendants' acts of trademark infringement, as alleged above, are causing SGUS and the public irreparable injury, and will continue to do so unless restrained and enjoined.

59.    Defendants' ongoing and unlawful use of Ventura Trade Dress damages SGUS and will, without an injunction prohibiting such acts in the future, further irreparably harm SGUS and irreparably damage the value of the Ventura Trade Dress, and the associated goodwill.

60.    On information and belief, Defendants have no present intention of terminating the activities complained of but, on the contrary, are continually seeking to expand such activities.

61.    Defendants' willful acts of trademark infringement justify the award of actual and/or treble damages for each act of infringement of Plaintiff's Ventura Trade Dress in a total

12

amount which may only be ascertained by discovery of Defendants' business and financial records, together with costs and attorney's fees. Alternatively, SGUS is entitled to the actual damages incurred as a result of Defendants' infringement plus any additional profits of Defendants attributable to the acts of infringement, together with costs and attorney's fees.

## COUNT II

## UNFAIR COMPETITION AND FALSE DESIGNATION OF ORIGIN OR SPONSORSHIP (15 U.S.C. § 1125(a))

62. Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 61, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

63. The Infringing Watches sold by the Defendants copies Plaintiff SGUS's Ventura Trade Dress and constitutes a False Designation of Origin of goods sold by Defendants and false representations that Defendants' goods are sponsored, endorsed, licensed or authorized by, or affiliated or connected with Plaintiff SGUS.

64. The Ventura Trade Dress was originated by Plaintiff and its characteristics are unique, inherently distinctive, and non-functional.

65. By virtue of SGUS's first use, promotion of and notoriety garnered by the Ventura Trade Dress, SGUS has established secondary meaning in its Ventura Trade Dress identifiable with SGUS.

66. Defendant Stührling, without the consent or authorization of SGUS, has adopted and utilized SGUS's Ventura Trade Dress in Defendant Stührling's Infringing Watches.

13

67. Defendant Stührling's misappropriation of the Ventura Trade Dress is likely to cause purchasers in interstate commerce to be confused, misled or deceived between SGUS's HAMILTON VENTURA watch and Defendant Stührling's Infringing Watches.

68. Defendant ValueVision's promotion, advertising, offering for sale, and sale of the Infringing watches is likely to cause purchasers in interstate commerce to be confused, misled or deceived between SGUS's HAMILTON VENTURA watch and the Infringing Watches.

69. Upon information and belief, Defendant Stührling knowingly adopted and used copies, variations, simulations or colorable imitations of the Ventura Trade Dress with full knowledge of Plaintiff's intellectual property rights in the HAMILTON VENTURA watch.

70. Defendants' activities, as alleged herein, constitute a False Designations of Origin in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and have damaged SGUS irreparably.

## COUNT III
## FALSE ADVERTISING (15 U.S.C. § 1125(a))

71. Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 70, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

72. Without the consent or authorization of SGUS, Defendants openly advertise and sell watches copying, in minute detail, the Ventura Trade Dress.

73. Defendants are not authorized by SGUS to sell any watches bearing the Ventura Trade Dress in the United States.

14

74.     Defendants; advertising and promotion of the Infringing Watches misrepresent the nature, characteristics and qualities of the Infringing Watches, attempting to pass off the Infringing Watches as Plaintiff's HAMILTON VENTURA.

75.     Defendants' advertising and promotion of the Infringing Watches misrepresent the nature, characteristics and qualities of the Infringing Watches, attempting to pass off the Infringing Watches as having the same qualities and value as Plaintiff's HAMILTON VENTURA, when in fact, they do not.

76.     Defendants' advertising and promotion of the Infringing Watches misrepresent the nature, characteristics and qualities of the Infringing Watches. By appropriating the Ventura Trade Dress, Defendants attempt to pass off the Infringing Watches as authorized by, associated with, sponsored by or somehow connected to Plaintiff and its HAMILTON line of watches, when they are, in fact, not.

77.     Defendants' advertising and promotion of the Infringing Watches misrepresent the nature, characteristics and qualities of the Infringing Watches. By appropriating the Ventura Trade Dress and referencing the major motion picture release touting the HAMILTON watch featuring the Ventura Trade Dress, Defendants attempt to pass off the Infringing Watches as authorized by, associated with, sponsored by or somehow connected to Plaintiff and its HAMILTON VENTURA watches, when they are, in fact, not.

78.     Defendants' activities, as alleged herein, constitute a False Advertising in violation of Section 43(a) of the Lanham Act, 15 U.S.C. § 1125(a), and have damaged SGUS irreparably.

15

## COUNT IV
## COMMON LAW UNFAIR COMPETITION

79.     Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 78, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

80.     Defendants engaged in unfair competition by unlawfully appropriating, distributing, falsely advertising, offering for sale, selling, and using without authorization Plaintiff's Ventura Trade Dress that is contained in Plaintiff's HAMILTON VENTURA watch.

81.     Defendant Stührling adopted and used the Ventura Trade Dress with full knowledge of Plaintiff's rights in the HAMILTON VENTURA watch.

82.     The sale by Defendants of the Infringing Watches has resulted in the misappropriation of and trading upon Plaintiff's goodwill and business reputation at SGUS's expense and at no expense to the Defendants.

83.     Defendants' misappropriation of Plaintiff's goodwill, as symbolized by the Ventura Trade Dress, has unjustly enriched Defendants.

84.     Defendants' misappropriation of Plaintiff's goodwill, as symbolized by the Ventura Trade Dress, has damaged SGUS.

85.     Defendants' misappropriation of SGUS's goodwill, as symbolized by the Ventura Trade Dress, has confused and/or deceived the public and consumers.

86.     Defendants' activities, as alleged herein, constitute unfair competition with SGUS and have damaged SGUS in an amount not yet subject to determination.

16

## COUNT V

## DECEPTIVE TRADE PRACTICES (N.Y. General Business Law § 349)

87.     Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 86, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

88.     Defendant Stührling's misappropriation of Plaintiff's VENTURA Trade Dress is in direct competition with SGUS's HAMILTON VENTURA watches.

89.     Defendant Stührling's wholesale copying of Plaintiff's Ventura Trade Dress is likely to deceive consumers into believing that the Infringing Watches are associated with or authorized by SGUS, when they are, in fact, not.

90.     By reason of the acts and practices as herein alleged, Defendants have engaged in deceptive trade practices or misleading activities in the conduct of business, trade or commerce, or furnishing of goods and/or services, in violation of § 349 of the New York General Business Law.

91.     The public is likely to be damaged as a result of Defendants' deceptive trade practices or activities.

92.     Defendants' activities, as alleged herein, constitute deceptive trade practice pursuant to New York General Business Law § 349 and have damaged SGUS in an amount not yet subject to determination.

## COUNT VI
## FALSE ADVERTISING (N.Y. General Business Law § 350)

93.     Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 92, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

94.     Defendants' advertising and promotion of the Infringing Watches, featuring a wholesale copying of Plaintiff's Ventura Trade Dress, has misrepresented and continues to misrepresent to consumers that the Infringing Watches are associated with or authorized by SGUS, when they are, in fact, not.

95.     By reason of the acts and practices as herein alleged, Defendants have engaged in false advertising, in violation of § 350 of the New York General Business Law.

96.     The public is likely to be damaged as a result of Defendants' false advertising.

97.     Defendants' activities, as alleged herein, constitute false advertising pursuant to New York General Business Law § 350 and have damaged SGUS in an amount not yet subject to determination.

## COUNT VII
## TRADEMARK INFRINGEMENT (N.Y. General Business Law § 360-k)

98.     Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 97, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

99.     As alleged herein, Defendants' conduct constitutes trademark infringement in violation of New York General Business Law § 360-k and have damaged SGUS in an amount not yet subject to determination.

**COUNT VIII**

**INJURY TO BUSINESS REPUTATION (N.Y. General Business Law § 360-l)**

100.    Plaintiff restates and reavers each and every allegation contained in paragraphs 1 through 99, inclusive, and the acts of Defendants asserted therein, as if fully recited in this paragraph.

101.    SGUS is the exclusive owner of the HAMILTON Marks and the Ventura Trade Dress throughout the United States, including in the State of New York.

102.    SGUS's HAMILTON Marks and the Ventura Trade Dress are distinctive and capable of being diluted.

103.    Defendants' conduct has created and will continue to create a likelihood of injury to the public image and reputation of SGUS, and to dilute the distinctive quality of the Ventura Trade Dress, all in violation of, inter alia, New York General Business Law § 360-l.

104.    As alleged herein, Defendants' conduct constitutes injury to business reputation and dilution in violation of New York General Business Law § 360-k and have damaged SGUS in an amount not yet subject to determination.

19

## DEMAND FOR JURY TRIAL

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff hereby demands a trial by a Jury on all issues triable by right of Jury.

WHEREFORE, Plaintiff prays:

1.     That pursuant to 15 U.S.C. §1116 and the equity jurisdiction of this Court, Defendants and their officers, agents, employees, representatives, and all persons in privity therewith be preliminarily and permanently enjoined and restrained from using on or in connection with the importation, sale, offering for sale, distribution, exhibition, display or advertising of goods or services through the Internet or otherwise, any Ventura Trade Dress;

2.     That Defendants and their officers, agents, employees, or representatives, and all persons in privity with them be preliminarily and permanently enjoined and restrained from destroying, secreting or altering, pursuant to 15 U.S.C. §1118, all dyes, molds, letterheads, advertising materials, computer programs in any language or format (including HTML, Java or other formats for use in internet web pages), labels, packages, containers, name plates, watches and any other printed or electronic matter of any nature, and any products in their possession bearing any Ventura Trade Dress utilized by Plaintiff, either alone or in combination with other words or symbols, or any colorable imitation;

3.     That pursuant to 15 U.S.C. §1117, Defendants be directed to pay over to Plaintiff any and all damages which they have sustained by consequence of Defendant's statutory and Common Law Trademark Infringement, False Advertising, and Unfair Competition as enumerated herein;

20

4.     That pursuant to 15 U.S.C. §1117, Defendants be directed provide Plaintiff an accounting of all profits that they have obtained by consequence of Defendants' statutory and Common Law Trademark Infringement, False Advertising, and Unfair Competition as enumerated herein;

5.     That Defendants be directed to account for and pay over all gains, profits, and advantages derived by Defendants and any damages sustained by Plaintiff as a result of Defendants' activities constituting Trademark Infringement, Deceptive Trade Practices, False Advertising, Injury to Business Reputation and Dilution under New York State Law  as enumerated herein;

6.     That Defendants and their officers, agents, employees, or representatives, and all persons in privity with Defendants be required to file with this Court and serve upon Plaintiff a report in writing and under oath setting forth in detail the manner and form in which the Defendants have complied with the terms of the injunction;

7.     That, because of the willful nature of the infringements, the amounts of actual damages be trebled as provided for in 15 U.S.C. § 1117;

8.     That, pursuant to 15 U.S.C. § 1117(a), Plaintiff seeks reasonable attorneys' fees;

9.     That the Court declare Defendant's acts and conduct infringe the Ventura Trade Dress held by the Plaintiff;

10.    That the Court declare Defendants' acts and conduct infringing the Ventura Trade Dress are willful;

11.    That the Court require the Defendants to account to Plaintiff for all profits and expenses realized by Defendants;

21

12.    Any such other and further relief as this Court deems just and equitable.

Respectfully submitted
for Plaintiff,

By:

Jess M. Collen   (JC 2875)
Thomas P. Gulick (TG 5602)
Joshua Paul (JP 4079)
COLLEN *IP* Intellectual Property Law, P.C.
The Holyoke-Manhattan Building
80 South Highland Avenue
Town of Ossining
Westchester County, New York 10562
(914) 941 5668
(914) 941-6091 (facsimile)

Dated: June 11, 2012

22